NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Andrew Bartok, individually, and/or Revelations, LLC<br><br>        Appellants,<br><br>    v.<br><br>Roberta A. DeAngelis, United States Trustee for Region 3<br><br>        Appellee. | Civil Action No. 11-cv-03710 (SDW)<br><br><br><br>OPINION<br><br><br>February 29, 2012 |

**WIGENTON**, District Judge.

This matter comes before this Court on appeal by Andrew Bartok ("Bartok"), individually, and/or Revelations, LLC ("Revelations") (collectively with Bartok, "Appellants"), from an interlocutory order issued by the Honorable Morris Stern, U.S.B.J. for the District of New Jersey, modifying a preliminary injunction against Appellants in an adversary complaint captioned, *Roberta A. DeAngelis, United States Trustee v. Andrew Bartok, individually and/or Revelations, LLC*, Adv. Proc. No. 10-02448 ("Adversary Proceeding"), pending in the chapter 7 case of Charles H. Moffat ("Moffat" or "Mr. Moffat"), Bankr. Case No. 10-19480. The Bankruptcy Court issued the original preliminary injunction by order dated November 15, 2010 ("Preliminary Injunction Order") and modified that injunction by order dated April 26, 2011 ("Modified Preliminary Injunction Order").

This Court has jurisdiction over the appeal of an interlocutory order of the Bankruptcy Court pursuant to 28 U.S.C. §§ 158(a) and 1292(a)(1). 28 U.S.C. §§ 158 and 1292 (2006); *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 282 n. 16 (3d Cir. 2002). The Bankruptcy Court had jurisdiction to issue its Preliminary Injunction Order and the Modified Preliminary Injunction

Order pursuant to 28 U.S.C. §§ 157(a) and (b), and 1334(a) and (b).  28 U.S.C. §§ 157 and 1334 (2006).  Pursuant to 28 U.S.C. § 158(c)(2) "[a]n appeal under subsection (a) ... of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]"  28 U.S.C. § 158 (2006).

This Court has considered the parties' submissions and the items they designated as part of the record on appeal.[1]  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Fed. R. Civ. P. 78.

For the reasons discussed below, the decision of the Bankruptcy Court to enter the Modified Preliminary Injunction Order is **AFFIRMED**.

## FACTUAL AND PROCEDURAL HISTORY

A.  Background

On November 8, 2010, Roberta A. DeAngelis, United States Trustee for Region 3 ("Appellee" or "United States Trustee") filed an adversary complaint seeking to permanently enjoin Appellants from engaging in activities associated with being a "bankruptcy petition preparer" as that term is defined under 11 U.S.C. § 110(a)(1) pursuant to 11 U.S.C. § 110(j)(2)(B), (j)(3) and 105(a).  (Defs.' Record on Appeal ("ROA") Ex. 1, "Compl." ¶ 1.)  The United States Trustee bases her adversary complaint on orders issued in three separate bankruptcy cases, including that of Moffatt, all filed in this district, entered on default, imposing sanctions against Bartok and/or Revelations, LLC for violating section 110(b)(1) (failure to sign and print name of preparer or principal of corporate preparer), (c)(1) (failure to disclose Social Security number of each individual who prepared the document, or Social Security number of principal of corporate preparer), (e)(2) (providing legal advice), and (h)(2) (failure to disclose

---

[1] The parties were directed to submit the supplemental record that was forwarded to the Court or a list of the documents included in the submission, but as of the date of this Opinion they have failed to do so.  As appropriate, the supplemental records are referred to and cited herein.

2

fee).  (*Id*. ¶¶ 16-33 (citing *In re Jose Valdez*, Case No. 09-14366 (NLW) (Bankr. D.N.J.) (order filed imposing $27,675 in total sanctions on Appellants); *In re Lucille Limone*, Case No. 09-34274 (MS) (Bankr. D.N.J.) (order filed imposing $45,800 in total sanctions)).

On March 31, 2010, in the underlying bankruptcy case, a chapter 13 petition was filed in the name of Charles H. Moffatt.  (Pl.'s Record on Appeal ("ROA") Ex. 10, "Moffatt Bankr. Pet.")  On June 24, 2010, the United States Trustee filed a motion to sanction Bartok and Revelations under section 110 with a supporting certification by Moffatt.  (*Id*. Ex. 17, "Moffatt Sanctions Mot." & "Moffatt Certification.")  In the Moffatt Certification, Moffatt asserted that he received an advertisement in the mail which read "Revelations" at the top, was signed by "Andrew Bartok, president & CEO," and called Revelations "America's Best Foreclosure Experts."  (Moffatt Certification Ex. A.)  The advertisement listed both a "New York & New Jersey Office" and a "South Jersey & Penn. Office" and stated that "We provide expert foreclosure services across the United States."  Most significantly, the advertisement also stated that Bartok had "stud[ied] at the local law library," that he had learned "**SPECIAL LOOPHOLES AND DELAYING TACTICS** that the rich and powerful use against their banks," and that Revelations would explain "these legal loopholes."  (*Id*.) (emphasis in original).  The advertisement further stated that unlike lawyers who are not "permitted by law to help you delay the banks," Revelations can and "will show you the 'Roadmap' to save your home."  (*Id*.)

Moffatt stated that after receiving the advertisement, he went to an appointment at Revelations' office and met with Veronica Tobin, who advised him that Revelations could help delay his foreclosure for three years, provided he pay $1,500 initially followed by $500 monthly, amounts that she subsequently reduced to $800 initially and $400 monthly.  (Moffatt Certification ¶ 3.)  Moffatt also stated that he later met with Bartok, and came away with the impression that Bartok was a lawyer, or had at least studied law.  (*Id*. ¶ 5.)  Moffatt later met

with Tobin again, at which time he gave her an $800 money order paid to the order of "Revelations" for "mortgage problems." (*Id*. ¶ 8.) Moffatt also stated that he appeared at Revelations' office and signed the bankruptcy documents in the places Tobin told him to sign, but played no other part in the preparation of the documents. (*Id*. ¶ 11.) Moffatt further stated Tobin advised him that filing for bankruptcy would delay the foreclosure process for three years, during which time "the bank would own the house, pay the taxes and insurance, and [Moffatt] would live there rent free." (*Id*.)

On August 5, 2010, Judge Stern entered an order by default in that case imposing $29,800 in total sanctions on Bartok and Revelations, jointly and severally, for violations of section 110 identical to the sanctions orders in the Valdez and Limone matters. (Defs.' ROA Ex. 1, Complaint for Injunction and Other Relief ("Compl.") ¶ 11.)[2]  Appellants allege that they are financially unable to pay the amounts required under the Sanctions Orders and it is undisputed that Appellants have never paid the fines imposed under the Sanctions Orders which total approximately $113,275.00. (Appellants' Br. 9.)

    B.  The Preliminary Injunction

On November 8, 2010, the United States Trustee filed a motion for a preliminary injunction. (Pl.'s ROA Ex. 1, "Pl.'s Mem. of Law in Support of Preliminary Injunction Motion.") At the November 15, 2010 hearing, counsel for the United States Trustee presented the Bankruptcy Court with a copy of an advertisement that Limone had received recently. (Defs.' ROA Ex. 3, "Nov. 15, 2010 Hr'g Tr." 11:24-12:3.) Bartok appeared *pro se* requesting additional time to engage counsel, which the Bankruptcy Court denied, but made no submission in opposition to the motion. (Appellants' Br. 10-11.) The Bankruptcy Court found that a preliminary injunction was justified, "given that there are at least three cases where you've been

---

[2] The sanction orders in the cases for Valdez, Limone and Moffatt shall be referred to collectively as "Sanctions Orders."

fined, where you haven't paid, and there's a rather ugly history that was proven in papers before this Court." (Nov. 15, 2010 Hr'g 9:1-4.)  The Bankruptcy Court also stated that "[b]ut for all the reasons that the [United States Trustee] has put forth and all the history of the penalties developed through certification by debtors who have been harmed by the [Appellants'] activities, this Court will not allow that to go on as a risk to the public, pending this adversary proceeding's conclusion." (*Id*. at 9:19-25.)

The Preliminary Injunction Order, filed November 15, 2010, enjoined Appellants from: (1) "any activities in New Jersey which fall within the definition of a bankruptcy petition preparer, as the term is defined in [section 110], and . . . case law interpreting the definition of this term, whether such activities are done for compensation [ ] or any kind of fee or for free"; (2) "filing or preparing to file any documents for filing in New Jersey"; and (3) "advertising, marketing, promoting, or otherwise communicating to any third party any services . . . that are within the definition of a bankruptcy petition preparer, as set forth in this order." (Defs.' ROA Ex. 4, Preliminary Injunction Order.)

C.  The Modified Preliminary Injunction

On March 7, 2011, the United States Trustee filed a motion on short notice seeking a permanent injunction and additional monetary penalties based on new information that Appellants continued to engage in activities that the Preliminary Injunction Order enjoined. (Defs.' ROA Ex. 6, "Pl.'s Mot. For an Order Imposing Further Monetary Sanctions.")  In a supporting certification filed with that motion, Robert Conlon ("Conlon") stated that he received an advertisement in the mail from Foreclosure Club of America." [3] (*Id*. "Conlon Certification" ¶ 1.)  Conlon then asserted facts which indicated that he underwent an experience similar to

---

[3] The flyer was otherwise similar to a flyer that Limone received, except that it also attached the same excerpts from court materials attached to the flyer that Moffatt received from Revelations on or about January 18, 2011. (Conlon Certification ¶ 1, Ex. A.)

5

Valdez, Limone and Moffatt.  (*Id*. at ¶¶ 2-16.)  It is undisputed that Conlon never returned to Foreclosure Club of America, that he paid no compensation to Appellants and that Appellants never filed a bankruptcy petition on his behalf.  (*Id*. at ¶¶ 17-18.)

Bartok did not respond directly to the United States Trustee's motion; instead, his counsel, Mitchell B. Seidman, Esq., submitted a certification that attached a number of documents, including an indictment issued in the United States District Court for the Southern District of New York against Bartok and another defendant.  (Defs.' ROA Ex. 7, "Seidman Certification.")  The indictment alleged criminal violations arising from several bankruptcy cases filed in Poughkeepsie and White Plains, New York through an entity named Revelations Consulting, LLC, and that Bartok and the other defendant (i) contacted several individuals with a mailed flyer, (ii) advised them that Revelations Consulting, LLC would render services for an initial payment of $1,500 plus monthly payments thereafter, (iii) filed bankruptcy petitions for them, (iv) advised them not to attend any proceedings in the bankruptcy cases, and (v) prepared documents in the individuals' names for filing during the those cases.[4]  (Seidman Certification Ex. H.)

On March 21, 2011, the Bankruptcy Court heard the United States Trustee's motion and at the conclusion of the hearing, declined to grant the United States Trustee's request to impose a permanent injunction immediately before the culmination of the adversary proceeding and declined to impose additional monetary sanctions. (Defs.' ROA Ex. 8, "Mar. 21, 2011 Hr'g Tr." 58:14-23.)  The Bankruptcy Court did modify the Preliminary Injunction to apply nationwide

---

[4] In addition, the advertisements referred the recipient to several attached excerpts from a transcript and court correspondence. (Conlon Certification ¶ 1, Ex. A.) One excerpt was of correspondence in a bankruptcy case that referred, in highlighted text marked "READ THIS" in the margin, to a "self-taught . . . sophisticated individual who has an understanding of the inner working of the bankruptcy court and knows how to do legal research . . . [a] clever guy [attempting to] continue to manipulate the bankruptcy process and further frustrate efforts taken by [the] creditor to protect itself." (*Id*.)  The other attachments contained highlighted text referencing delays in foreclosure proceedings; in the transcript excerpt the court is quoted telling Bartok that he'd "been stalling the foreclosure for six years." (*Id*.)

6

and to preclude rendering pre-bankruptcy foreclosure advice. (*Id*. at 57:18-19, 24-25; 58:14-16; 59:15-16.)  Based on its findings on April 26, 2011,[5] the Bankruptcy Court modified its Preliminary Injunction Order to enjoin Bartok, Revelations, and their agents, employees and associates nationwide, "from filing, or preparing for filing, any documents in any United States Bankruptcy Court, whether related to foreclosure advisory services, or bankruptcy petition preparer services governed by [section 110]."  (Defs.' ROA Ex. 9, "April 26, 2011 Bankr. Ct. Order" at 4.)  Appellants were also ordered to "immediately cease, nationwide, advertising, marketing, promoting, or otherwise communicating to any third party any services, forms, or other products that are related to foreclosure advisory services or are within the definition of a bankruptcy petition preparer."  (*Id*. at 4-5.)  Appellants filed a timely notice of appeal on April 29, 2011 pursuant to 28 U.S.C. §§ 158(a) and (c)(2) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8002.  (Defs.' ROA Ex. 10.)

---

[5] The Modified Preliminary Injunction included the following findings: (1) [Appellants] engaged in conduct with "including advertising, marketing, promoting or otherwise communicating . . . services or products that are within the definition of a bankruptcy petition preparer"; (2) the services offered, though "under the guise of 'foreclosure advisory services,'" were "to be effectuated through violative 'ghost written' bankruptcy petition preparer services and functions of Defendant Bartok and his associates"; (3) The fact that this conduct did not result in a bankruptcy petition "does not obviate Defendant Bartok's violation of" the [Preliminary] Injunction; (4) "Bartok has demonstrated again . . . that he is a danger to a vulnerable segment of the public, including homeowners who are facing the pressure and stress of foreclosure proceedings"; (5) "Bartok has demonstrated his propensity to extend his violative conduct beyond New Jersey, and to mask, deceptively, his soliciting 'flyer' as something other than a solicitation for bankruptcy petition preparer services"; and (6) "Bartok is in contempt of the [Preliminary] Injunction." April 26, 2011 Bankr. Ct. Order 1-5.

**LEGAL STANDARDS**

*A. Standard of Review*

District Courts "have mandatory jurisdiction to hear appeals from final orders of bankruptcy judges." *See* 28 U.S.C. § 158(a)(1993).  On appeal, a federal court may set aside a bankruptcy court's findings of fact only if clearly erroneous. *See, e.g., Brennan v. Poritz*, 198 B.R. 445, 448 (D.N.J. 1996); *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *GE Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184 (3d Cir. 1988). The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous. *See* Bank. R. 8013; *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).  In contrast, a bankruptcy court's legal conclusions or questions of law are subjected to plenary review. *See, e.g., In re Modular Structures, Inc.*, 27 F.3d 72, 76 (3d Cir. 1994) (citation omitted); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989).

When reviewing a matter committed to the bankruptcy court's discretion, the district court may only determine whether the bankruptcy court did or did not abuse its discretion. *See* Bank. R. 8013; *see also In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir. 1988). "In reviewing a preliminary injunction, we 'exercise plenary review over the [bankruptcy court's] conclusions of law and its application of law to the facts, but review its findings of fact for clear error.'" *Id*. "We review the [bankruptcy] court's ultimate decision to issue an injunction for abuse of discretion." *Id*. (citing *Nken v. Holder*, 556 U.S. 418, 430 (2009) (comparing stays pending appeal with preliminary injunctions and a court's discretion in deciding whether to grant or to deny)); *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 595 (3d Cir. 2002)). "'An abuse of discretion exists where the [bankruptcy court's] decision rests upon a clearly erroneous finding of fact, an errant

conclusion of law, or an improper application of law to fact.'" *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 819 (3d Cir. 2006) (quoting *A.C.L.U. of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir. 1996)).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 565 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 365, 394-395 (1948)).  "If the [Bankruptcy Court's] account of the evidence is plausible in light of the record viewed in its entirety, the [District Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.*[6]

    *B.  Preliminary Injunctions*

The law on preliminary injunctions is well-settled.  The Third Circuit has determined that "[t]o obtain a preliminary injunction, a plaintiff must show: '(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'" *Minard Run Oil Co. v. U.S. Forest Serv.*, Nos. 10-1265 and 10-2332, 2011 WL 4389220, at *8 (3d Cir. Sept. 20, 2011) (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).

### DISCUSSION

    *A.  The Scope of Section 110 of the Bankruptcy Code*

Appellants argue that because 11 U.S.C. § 110 proscribes bankruptcy petition preparers from engaging in specific activities under subsections (a), (e), (f) and (g), the Bankruptcy Court

---

[6] This Court also finds Bankruptcy Rule 8013 applicable, which provides in relevant part that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  FED. R. BANKR. P. 8013.

erred because it modified its Preliminary Injunction Order to enjoin activity allegedly outside that scope, such as if Bartok and/or Revelations engaged in "mere communication" with third parties concerning the "mere possibility" of engaging in activity described in section 110. (Appellants' Br. 15.)  Appellants submit that Conlon's testimony supports the fact that they never engaged in any acts described under section 110, and argue accordingly that the Bankruptcy Court exceeded its authority to enjoin their ability to speak about bankruptcy. (*Id*. 18-19.)  Appellants urge this Court to adopt a reading of section 110 that would limit the bankruptcy court's ability to enjoin parties from the bankruptcy preparation activities described in section 110 and posit that the Bankruptcy Court can only prohibit them from "completing" a bankruptcy petition. (*Id*.)  Appellants also argue that insofar as the Bankruptcy Court interpreted its Preliminary Injunction Order to encompass and restrain acts that fall outside of the statute's parameters, such as rendering "foreclosure advice," that interpretation was erroneous. (*Id*. at 19.)

In opposition, Appellee argues that under the Preliminary Injunction Order the Appellants were enjoined from performing "any activities" regulated by section 110 and from "advertising, marketing, promoting, or otherwise communicating to any third party any services" regulated by section 110, and that the services offered to Conlon fall within the scope of those enjoined by the Preliminary Injunction. (Appellee's Br. 28.)  Appellee also contends that Conlon's testimony established that Appellants continued to engage in activities that section 110 regulates in violation of the Preliminary Injunction Order. (*Id*.)

  a. Section 110 of the Bankruptcy Code

Congress added section 110 to the Bankruptcy Code in 1994 as part of the Bankruptcy Reform Act of 1994, Pub. L. 103-394, 108 Stat. 4106.  The House Report described the concerns underlying the enactment of section 110:

> While it is permissible for a petition preparer to provide services
> solely limited to typing, far too many of them also attempt to

> provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R. REP. NO. 835, at 56 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3365.

The bankruptcy court may enjoin a preparer from engaging in specific conduct or may completely enjoin it from acting as a bankruptcy petition preparer. 11 U.S.C. § 110(j)(2)(A), (B) (2006). If the court finds that the bankruptcy petition preparer (i) violated section 110 or any other provision of the Bankruptcy Code, (ii) misrepresented its experience or education, or (iii) "engaged in any other fraudulent, unfair, or deceptive conduct," the court may enjoin it from engaging in such conduct. 11 U.S.C. § 110(j)(2)(A). The bankruptcy court may also enjoin a person from ever again acting as a bankruptcy petition preparer if it finds that the person has, among other things, (i) continually violated section 110 and the Bankruptcy Code or "engaged in any other fraudulent, unfair, or deceptive conduct" and merely enjoining the conduct would not be sufficient to prevent continued interference with the proper administration of the Bankruptcy Code, (ii) failed to pay a penalty imposed under section 110, or (iii) failed to disgorge fees as ordered by the court. 11 U.S.C. § 110(j)(2)(B).

Also, the bankruptcy court "as part of its contempt power, may enjoin a bankruptcy petition preparer that has failed to comply with a previous order issued under [] section [110]." 11 U.S.C. § 110(j)(3). Section 110 does not place any geographic limit on any injunction imposed under its terms. 11 U.S.C. § 110(j) (2006). Finally, under 11 U.S.C. § 105(a) the court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, and it may "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders . . . or to prevent an abuse of process." 11 U.S.C. § 105(a) (2006).

11

Under applicable case law, Appellants' alleged foreclosure advisory services have been found to violate section 110 even when they fall short of finalizing a document for filing. For example, foreclosure delay services, for which the filing of a bankruptcy petition is merely "a means to and incidental to that end," constitute services governed by section 110. *See United States Trustee v. Coleman (In re Alloway)*, 401 B.R. 43, 46 (Bankr. D. Mass. 2009). In addition, advising a potential customer that filing a bankruptcy petition will stay foreclosure and allow him to remain in his house constitutes the provision of "legal advice" in violation of section 110(e)(2)(B)(iii). *See*, *e.g.*, *In re McGill*, Nos. 06–32029 and 06–32784, 2007 WL 1119939 at *7 (Bankr. E.D. Tenn. Apr. 13, 2007); *In re Guttierez*, 248 B.R. 287, 296 (Bankr. W.D. Tex. 2000). The Court in *Guttierez* noted that:

> Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting 'petition preparers' to rendering only "scrivening/typing" services. Anything else—be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.

*Guttierez*, 248 B.R. at 297-98. Also, merely offering to file a bankruptcy petition for someone paying for a different product is "tantamount to serving as a petition preparer" for purposes of section 110. *See Ferm v. United States Trustee (In re Crowe)*, 243 B.R. 43, 50 (B.A.P. 9th Cir. 2000). Consequently, this Court concludes that the Bankruptcy Court did not err when it determined that Appellants' so-called foreclosure advisory or delay services fell under the

activities proscribed under section 110. Appellants clearly sought to offer "legal advice" and the Bankruptcy Court correctly enjoined them from doing so.

As for Appellants' argument that the Bankruptcy Court erred in interpreting its own order, appellate courts are "reluctant to disturb a bankruptcy court's judgment interpreting its own earlier order." *In re Ranch House of Orange- Brevard, Inc.*, 773 F.2d 1166, 1168 (11th Cir. 1985); *see also In re Chicago, Milwaukee. St. Paul & Pacific R.R. Co.*, 784 F.2d 831, 834 (7th Cir. 1986) (the court "best knows the meaning of its own orders."). This Court accords "great weight" to the Bankruptcy Court's interpretation of its own order. *See, e.g., In re Shenango Group, Inc.*, 501 F.3d 338, 346 (3d Cir. 2007) (in determining whether a factual scenario applies to an order, the reviewing court "accords great weight to the Bankruptcy Court's construction of an order with which it is familiar by virtue of its direct involvement in the proceedings"); *In re Penn Cent. Transp. Co.*, 486 F.2d 519, 531 (3d Cir. 1973) (lower court's "interpretation of its own order in the decision appealed from is entitled to great weight"). The Preliminary Injunction Order enjoined Appellants from "advertising, marketing, promoting, or otherwise communicating to any third party any services . . . that are within the definition of a bankruptcy petition preparer, as set forth in this order." Here, the record demonstrates that Appellants violated section 110 and continued to do so even after the Bankruptcy Court issued the Preliminary Injunction Order. Accordingly, the Bankruptcy Court did not err in interpreting its order.

Finally, the cases that Appellants cite regarding the appropriate scope for an injunction are inapposite. Appellants largely rely on cases interpreting other statutes. *See United States v. Monsanto*, 491 U.S. 600 (1989) (holding that Comprehensive Forfeiture Act authorizes district court to enter pretrial order freezing assets in defendant's possession, even where defendant seeks to use assets to pay attorney); *NLRB v. Express Pub. Co.*, 312 U.S. 426 (1941) (holding

13

that the National Labor Relations Act does not give the NLRB an authority to enjoin violations of all the provisions of the statute merely because the violation of one has been found); *United States v. Jones*, 652 F. Supp. 1559 (S.D.N.Y. 1986) (injunction under 18 U.S.C. § 1345 to freeze proceeds from sale of a house exceeded the proper scope of that statute). Moreover, none of these cases involve statutes with language comparable to section 110(j)(2)(A), and the Appellants do not explain why section 110(j) should be construed similarly to these other statutes.

### B. *Modification of Preliminary Injunction Order Enjoining Appellants Nationwide*

Appellants argue that the Bankruptcy Court had insufficient evidence to (1) find that Bartok was a danger to a vulnerable segment of the public and (2) to find that Bartok had a propensity to extend violative conduct beyond New Jersey justifying an extension of the Preliminary Injunction outside of New Jersey. (Appellants' Br. 2.) Appellants submit that the clients who engaged Appellants, Valdez, Limone and Moffatt, resided in New Jersey and that their bankruptcy petitions were filed in the District of New Jersey. (*Id.* at 21.) They also submit that Conlon is a resident of New Jersey, that Appellants' offices are physically situated in New Jersey and that accordingly, there is no evidence that Appellants engaged in any activity outside of New Jersey.[7]

On the other hand, Appellee argues that the Bankruptcy Court had ample evidence, submitting that the flyers mailed to prospective customers tout "expert foreclosure services across the United States," including a list of states including not only New Jersey, but also New

---

[7] Appellants also argue that the certifications filed in support of the U.S. Trustee's sanctions motions are subject to attack based on their initial discovery and depositions of Karen Limone and Lucille Limone, in particular. (Appellants Br. 8.) Appellants submit that Valdez never made any affirmative allegations that he met with Bartok, that Bartok provided any legal advice to him, or that Bartok prepared any document for filing on his behalf. (*Id.* 7.) Appellants also submit that neither Lucille Limone nor Karen Limone ever made affirmative allegations that Bartok met with, offered any legal advice to or prepared any document for filing on behalf of either of them. (*Id.* 8.) Finally, Appellants further submit that there are no affirmative allegations contained in the Moffatt Certification which suggest that Bartok offered any legal advice or prepared any document for filing on Moffatt's behalf. (*Id.* 9.) This Court need not specifically address these arguments because they are not properly before this Court on appeal.

York, Connecticut, Pennsylvania and Florida, and that the criminal indictment filed in the Southern District of New York against Bartok evinces that Appellants have filed bankruptcy petitions in at least two states. (Appellee's Br. 37.)

First, this Court concludes that the plain language of sections 110(j)(2) and (3) sets no geographic limitation on the injunctions which a court may impose. 11 U.S.C. § 110(j) (2006); *see also Ross v. Smith (In re Gavin)*, 181 B.R. 814, 825 (Bankr. E.D. Pa. 1995) ("A nationwide injunction appears clearly authorized by §§ 110(j)(1) and (j)(2)(B), since they speak in terms of entry of an injunction preventing a person from acting as a preparer anywhere."). In addition, this Court is conscious of the fact that Congress did impose geographic limitations when it intended them. *See, e.g.*, 11 U.S.C. § 110(j)(1) (2006). This Court determines that the lack of geographic parameters on the scope of the injunction was intentional and that accordingly, this Court may not read a geographic limitation into section 110 which Congress did not intend. *See generally United States v. Naftalin*, 441 U.S. 768, 773 (1979) (rejecting a statutory construction that would read into a statute a requirement that Congress did not include, and holding, "[t]he short answer is that Congress did not write the statute that way. Most importantly, the fact that it did not [provide] strong affirmative evidence" that such limitation was not intended). Moreover, reading a geographic limitation in section 110 would lead to absurd circumstances, such as leaving consumers in other states vulnerable and requiring the United States trustee to file actions in each and every district across the country to protect unwary consumers from the same person(s).[8]

This Court is aware of applicable decisions where courts have entered nationwide injunctions against preparers who engaged in the same acts as the Appellants. *See, e.g.*, *McDow v. Mayton*, 379 B.R. 601, 607 (E.D. Va. 2007) (nationwide injunction where preparer engaged in

---

[8] "Person" as defined in the Bankruptcy Code "includes individual, partnership, and corporation." 11 U.S.C. § 101(41) (2006).

unauthorized practice of law and filed bankruptcy petitions in more than one district); *In re Wagner et al*, 241 B.R. 112, 123 (Bankr. E.D. Pa. 1999) (nationwide injunction where preparer "engaged in all three types of activity referenced under [Section] 110(j)(2)(A)(i)"); *Staiano v. File Aid (In re Bradshaw)*, 233 B.R. 315, 329 (Bankr. D.N.J. 1999) (nationwide injunction given likelihood of violations in the future); *In re Gabrielson*, 217 B.R. 819, 828 (Bankr. D. Ariz. 1998) (expanding scope of injunction to "any Federal District in which [preparer] may now or subsequently locate"); *U.S. Trustee v. Tank (In re Stacy)*, No. 96-3303, 1997 WL 178852 *2 (Bankr. D. Or. Apr. 3, 1997) (where preparer was previously enjoined statewide from engaging in unauthorized practice of law, injunction expanded to permanent national injunction for willful failure to pay fines and penalties for section 110 violations).[9]

Finally, the many of the cases which Appellants cite as supportive of their position that the Bankruptcy Court erred in extending the preliminary injunction to one with a nationwide scope are inapposite because they do not interpret section 110, but instead involve other types of issued nationwide injunctions. *See CBS Broadcasting, Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193 (11th Cir. 2001) (reversing nationwide preliminary injunction in copyright infringement action due to insufficient evidence to support the same); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir. 1977) (in an age discrimination lawsuit, the district court erred in issuing a nationwide injunction based on findings limited to an isolated event of discrimination). Here the record demonstrates that through their advertisements, Appellants offered their foreclosure advisory services generally "across the United States," and specifically in New Jersey, New York, Connecticut, Pennsylvania and Florida.

---

[9] Appellants cite to *United States Trustee v. Tank (In re Stacy)*, 193 B.R. 31 (Bankr. D. Or. 1996) for the proposition that some courts have imposed statewide injunctions, however, the bankruptcy court in *Stacy* just over a year later imposed a new injunction enjoining the preparer "permanently and nationally . . . from acting as a bankruptcy petition preparer" based on the willful failure to pay fines and penalties previously imposed under section 110. *In re Stacy*, 1997 WL 178852, at * 2.

Also, the record supports the Bankruptcy Court's finding that Appellants are a danger to a vulnerable segment of the public which is faced with economic hardship, namely homeowners faced with foreclosure.  Furthermore, the record demonstrates that Appellants sought fees from among others, Valdez, Limone, Moffatt, for their "foreclosure advisory services," which included the filing of bankruptcy petitions, and that bankruptcy petitions were indeed filed in those cases.  Appellants also offered these same services to Conlon for a fee after the Preliminary Injunction Order was issued on November 15, 2010.[10]  Moreover, Appellants have never paid the amounts required under any of the previous Sanctions Orders.  Accordingly, Appellants' reliance on *In re Martinez*, No. 02-51024, 72 Fed. Appx. 138 (5th Cir. 2003) (determining that the bankruptcy court implicitly found that [appellant Edward Casey] was a "bankruptcy petition preparer," but that "the record [was] unclear with regard to whether [appellant] "prepare[d] for compensation a document for filing.") is similarly misplaced.  (Appellants' Reply 4-5) Consequently, this Court concludes that the Bankruptcy Court's findings were not clearly erroneous and its entry of a nationwide preliminary injunction Order was not an abuse of discretion.

Finally, *Barrett v. Belleque*, No. 06-244, 2006 WL 3097420 (D. Or. Oct. 27, 2006) (determining that plaintiff inmate bringing civil rights action challenging defendant's confiscation of outgoing mail did not entitle him to the relief that he sought via his preliminary injunction motion, systemwide change of the Oregon Department of Corrections treatment of outgoing mail) is unsupportive of Appellants' argument that the Bankruptcy Court erred because it granted a nationwide injunction when the United States Trustee's complaint sought an injunction only in the State of New Jersey.  Federal Rule of Civil Procedure 54(c), made

---

[10] Conlon testified that he received an advertisement on or about January 18, 2011 from "Foreclosure Club of America" promoting services to assist homeowners faced with foreclosure. (Appellants' Br. 12 (citing Mar. 21, 2011 Hr'g Tr. 15:20-16:2.))

applicable in bankruptcy proceedings by Bankruptcy Rule 7054, titled "Judgments; Costs" provides that "[e]very other final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." FED. R. CIV. P. 54; FED. R. BANKR. P. 7054.

Here, the evidentiary record supports a nationwide injunction, and the Bankruptcy Court did not err in this respect. Given the evidentiary record and the fact that the adversary complaint is for a permanent injunction, the Bankruptcy Court's Preliminary Injunction Order was appropriate to bar Appellants from further engaging in activities in violation of section 110. Appellants continued to engage in unlawful activity and the Bankruptcy Court's Modified Preliminary Injunction Order enjoining Appellants on a nationwide basis was appropriate.

## CONCLUSION

For the reasons stated above, the decision of the Bankruptcy Court is **AFFIRMED**.

s/Susan D. Wigenton, U.S.D.J.


Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
     Parties